UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHANE BAUER,<br>PO Box 10426<br>Oakland, CA 94610,<br><br>PLAINTIFF<br>vs.<br><br>CENTRAL INTELLIGENCE AGENCY,<br>Washington, DC 20505<br><br>DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530<br><br>DEPARTMENT OF STATE,<br>2201 C St., NW<br>Washington, DC 20520<br><br>DEFENDANTS | ) Judge _____<br>) Civil Action No. _____ |

**COMPLAINT**

THE PARTIES

1.     Plaintiff Shane Bauer is a citizen of California.

2.     Mr. Bauer is an investigative reporter whose work requires the frequent

analysis of complex data and government records relating to a wide range of topics, from

government contracting to military operations to corrections policies to police

investigations. Mr. Bauer has a bachelor's degree in Peace and Conflict studies, with a

minor in Arabic language, from UC Berkeley. Much of Mr. Bauer's journalism has

focused on the Middle East.

1

3.      Defendant Central Intelligence Agency (CIA) is an agency of the United States. The CIA has possession, custody and control of records Plaintiff seeks.

4.      Defendant Department of Justice (DOJ) is an agency of the United States.

5.      The FBI is a component of the DOJ.  The FBI has possession, custody and control of records Plaintiff seeks.

6.      Defendant Department of State is an agency of the United States. The Department of State has possession, custody and control of records Plaintiff seeks

JURISDICTION AND VENUE

7.      This action arises under the Freedom of Information Act ("FOIA"), 5 USC § 552, and the Privacy Act, 5 USC § 552a.

8.      This Court has jurisdiction over the parties and subject matter pursuant to 5 USC § 552(a)(4)(B) and 5 USC § 552a(g)(1)(B)..

9.      Venue is proper in this district pursuant to 5 USC § 552(a)(4)(B) and 5 USC § 552a(g)(5).

BACKGROUND

10.      Plaintiff Shane Bauer spent several years in the Middle East and the broader Arabic-speaking world, starting as a visitor in 2002, and continuing as a student and later a journalist in subsequent years.  He has visited Turkey, Syria, Egypt, Lebanon, Israel/Palestine, Yemen, Oman, Sudan, Chad, and Iraq, among other countries.

11.      In Mr. Bauer moved to Damascus, Syria with his girlfriend (now wife) Sarah Shourd. There, he worked as a journalist and she as an English-language teacher.

12.      While living in Damascus, Mr. Bauer and Ms. Shourd were visited by Joshua Fattal and Shon Meckfessel. The four of them took a short trip from Damascus to

the Kurdish region of Iraq. There, while on a hike near the village of Ahmadawa, Mr.

Bauer, Ms. Shourd, and Mr. Fattal unwittingly approached the Iranian border and were

apprehended by Iranian authorities.   The three were driven to Tehran and detained in

Evin House of Detention.

13.     Ms. Shourd was released on September 14, 2012, and Mr. Fattal and Mr.

Bauer were release on September 21, 2011.  Mr. Meckfessel, while in Iraq at the time of

the arrest of Ms. Shourd, Mr. Fattal, and Mr. Bauer, did not accompany them on the hike,

and was later interrogated by US authorities in Iraq.

14.     During their detention, the FBI was involved in the case. The FBI spoke

many times by telephone with their families in the early months of the detention. They

paid for an airplane ticket for Mr. Bauer's sister, Shannon Bauer, to visit his mother

immediately following the arrest of Mr. Bauer. They advised their families on how to

interact with the media. They visited their families' homes, and the home of at least one

of Mr. Bauer's friends, David Martinez, in San Francisco. When their mothers travelled

to Tehran in May 2010 to visit them, the FBI met them at the airport and ushered them

through security checkpoints. When they returned to the United States, the FBI came to

their hotels to debrief.   After Ms. Shourd was released, the FBI requested an interview

with her, as they did with Mr. Fattal and Mr. Bauer upon their release.

15.     The CIA may have been involved in discussions of prisoner exchanges

between Iran and the United States, among other matters.

16.     A number of countries were involved in negotiating their release. Probably

the most involved was Oman, with Salem Al Ismaily as the envoy who worked closely

with the White House. President Jalal Talabani and his son Qubad Talabani of Iraq were

involved. President Hugo Chavez of Venezuela was involved, through the intermediary

Sean Penn and Fernando Sulichin. The countries of Brazil, Turkey, and Senegal also played rolls in attempting to secure their release.

17.    Others involved in attempts to secure our release were Bishop John Bryson Chane, Ambassador William Miller, the organizations CAIR, Amnesty-International, and major news media.

18.    The Department of State was highly involved in the case. Their families travelled to Washington, DC on numerous occasions to meet with State officials, including Secretary Clinton. They also maintained regular contact with State throughout their detention. State was in discussion with Oman and Iraq, and possibly Turkey, Senegal, Venezuela, and other countries in efforts to secure our release. Sean Penn was in discussion with DOS at some point regarding his intention to ask President Hugo Chavez of Venezuela to petition for our release.

19.    Many political and public figures were involved in the case, including President Barack Obama, Dennis Ross, Puneet Talwar, Mustapha Popal, General James Jones, John Kerry, Al Franken, Sean Penn, Muhammad Ali, Yusef Islam (formerly Cat Stevens), Noam Chomsky, Secretary of State Hillary Clinton, William Burns, Philo Dibble, and Carolee B Walker.

20.    Mr. Bauer has submitted FOIA requests to the CIA, FBI, and Department of State in order to learn more about the actions of the federal government in relation to the detention of the Mr. Bauer, Ms. Shourd, and Mr. Fattal in Iran.  Mr. Bauer intends to disseminate the information he receives through an article in *Mother Jones*, where he is a staff reporter.

21.    Plaintiff incorporates by reference each of the documents referred to in this Complaint.

PLAINTIFF'S FOIA REQUESTS

*CIA*

22.     On January 8, 2014, Plaintiff submitted FOIA/PA requests to the CIA

requesting records about himself, Josh Fattal, Sara Shourd, Shon Meckfessel, and the

incident in which he, Mr. Fattal, and Ms. Shourd were hostages in Iran.  The requests

included privacy waivers signed by Plaintiff, Mr. Fattal, Ms. Shourd, Mr. Meckfessel,

and five other individuals whose names might appear in responsive records.  Each of the

requests also sought expedited processing and a waiver of fees.

23.     The CIA's Information and Privacy office received the requests on

January 17, 2014.

24.     The CIA assigned the following tracking numbers:

| Item 1 of request | Shane Bauer (FOIA/Privacy Act request) | P-2013-01007 |
| Item 2 of request | Incident involving Fattal, Shourd, and Meckfessel | F-2014-00718 |
| Items 3-5 of request | Fattal, Shourd, and Meckfessel | F-2014-00982 |

25.     Mr. Bauer received a letter from the CIA dated January 30, 2014, denying

his request for expedited processing.  The letter further stated that the request regarding

Mr. Bauer was being processed under the Privacy Act.

26.     On February 20, 2014, Mr. Bauer filed an administrative appeal.  In his

appeal, Mr. Bauer sought review of the decision to deny expedited processing, and also

requested clarification as to whether the request regarding himself was also being

processed under FOIA.

27.     Plaintiff received a letter from the CIA dated March 19, 2014, responding

to his letter of February 20, 2014.  The March 19, 2014 letter stated that the CIA

regulations do not provide for an appeal of denials of expedited processing.  The letter

also clarified that Mr. Bauer's request regarding himself was being processed under both the Privacy Act and FOIA. The letter further stated that with regard to request F-2014-00718 (Item 2), the CIA Information Act exempts CIA operational files, but to the extent the request sought information subject to FOIA, the CIA was accepting the request and searching for records.

28.   Plaintiff received another letter from the CIA dated March 19, 2014. This letter stated that the CIA processed his request with tracking number F-2014-00982 (Items 3-5), and could not find any responsive records revealing an openly acknowledged CIA affiliation. The letter further set forth a Glomar response with respect to any other records, citing Exemptions 1 and 3.

29.   Plaintiff received another letter from the CIA dated April 24, 2014 finally responding to his requests F-2014-00718 (Item 2) and F-2014-00982 (Items 3-5). This letter stated that the CIA processed his requests and located material, but was withholding the material in its entirety, citing Exemptions 1 and 3. The letter further indicated that Item 1 was being processed.

30.   On April 30, 2014, Mr. Bauer filed an administrative appeal. In his appeal, Mr. Bauer sought review of the CIA's decision in its entirety, and specifically highlighted the CIA's failure to perform an adequate search and improper invocation of Exemptions 1 and 3.

31.   Plaintiff received another letter from the CIA dated May 22, 2014 acknowledging his appeal of F-2014-00718 (Item 2) and stating that it had been accepted.

32.   Plaintiff received another letter from the CIA dated May 22, 2014 acknowledging his appeal of F-2014-00982 (Items 3-5) and stating that it had been accepted.

6

*FBI*

33.     On January 8, 2014, Plaintiff submitted FOIA/PA requests to the FBI requesting records about himself, Josh Fattal, Sara Shourd, Shon Meckfessel, and the incident in which he, Mr. Fattal, and Ms. Shourd were hostages in Iran.  The requests included privacy waivers signed by Plaintiff, Mr. Fattal, Ms. Shourd, Mr. Meckfessel, and five other individuals whose names might appear in responsive records.  Each of the requests also sought expedited processing and a waiver of fees.

34.     Mr. Bauer received a letter from the FBI dated January 27, 2014 assigning his requests tracking number 1250185-000 and stating that the FBI was conducting a search for responsive records.

35.     Mr. Bauer received a letter from the FBI dated April 29, 2014, denying his request for expedited processing.

36.     On May 12, 2014, Mr. Bauer filed an administrative appeal.  In his appeal, Mr. Bauer sought review of the decision to deny expedited processing.  DOJ's Office of Information Policy (OIP) assigned the appeal the tracking number AP-2014-02672.

37.     Plaintiff received a letter from OIP dated May 22, 2014, responding to his appeal of the FBI's denial of expedited processing.  The letter stated that OIP was affirming the FBI's denial of expedited processing because the subject of the request was not a matter of widespread and exceptional media interest.

38.     As of the filing of this Complaint, Mr. Bauer has not received a final response to his FOIA/PA requests to the FBI with a determination as to whether the FBI will release or withhold all of the requested records or whether the FBI will grant a fee waiver.

39.     Under 5 USC § 552(a)(6)(C)(i), Mr. Bauer is deemed to have exhausted his administrative remedies with regard to his FOIA/PA requests to the FBI.

7

40.     Mr. Bauer has exhausted his administrative remedies with regard to his request for expedited processing.

*State*

41.     On January 8, 2014, Plaintiff submitted FOIA/PA requests to the Department of State requesting records about himself, Josh Fattal, Sara Shourd, Shon Meckfessel, and the incident in which he, Mr. Fattal, and Ms. Shourd were hostages in Iran.  The requests included privacy waivers signed by Plaintiff, Mr. Fattal, Ms. Shourd, Mr. Meckfessel, and five other individuals whose names might appear in responsive records.  Each of the requests also sought expedited processing and a waiver of fees.

42.     Mr. Bauer received a letter from the Department of State dated February 6, 2014 assigning his requests tracking number F-2014-01441 and stating that the Department of State was denying his request for expedited processing, but granting his request for a fee waiver.  The letter further stated that the Department of State would begin processing Mr. Bauer's requests.

43.     On February 20, 2014, Mr. Bauer filed an administrative appeal.  In his appeal, Mr. Bauer sought review of the decision to deny expedited processing.

44.     Mr. Bauer received a letter from the Department of State dated March 21, 2014 affirming the denial of expedited processing.

45.     As of the filing of this Complaint, Mr. Bauer has not received a final response to his FOIA/PA requests to the Department of State with a determination as to whether the agency will release or withhold all of the requested records.

46.     Under 5 USC § 552(a)(6)(C)(i), Mr. Bauer is deemed to have exhausted his administrative remedies with regard to his FOIA/PA requests to the Department of State.

8

47.     Mr. Bauer has exhausted his administrative remedies with respect to his request for expedited processing.

## COUNT I:
## VIOLATION OF FOIA/PA
(All Defendants)

48.     This Count realleges and incorporates by reference all of the preceding paragraphs.

49.     The CIA has violated FOIA/PA by improperly failing to grant Plaintiff's request for expedited processing with respect to all of his requests.

50.     The CIA has violated FOIA/PA by failing to grant, or even rule on, Plaintiff's request for a fee waiver with respect to all of his requests.

51.     The FBI has violated FOIA/PA by failing to grant Plaintiff's request for expedited processing.

52.     The FBI has violated FOIA/PA by failing to grant, or even rule on, Plaintiff's request for a fee waiver and failing to determine whether it will produce records responsive to Plaintiff's FOIA/PA request 1250815-000, within the time period prescribed by 5 USC § 552(a)(6)(A)(i).

53.     The Department of State has violated FOIA/PA by failing to determine whether it will produce records responsive to Plaintiff's FOIA/PA request F-2014-01441, within the time period prescribed by 5 USC § 552(a)(6)(A)(i).

54.     The Department of State has violated FOIA/PA by failing to grant Plaintiff's request for expedited processing.

55.     Plaintiff has been and will continue to be irreparably harmed until Defendants are ordered to comply with Plaintiff's FOIA/PA requests.

<u>COUNT II:</u>
<u>VIOLATION OF FOIA BY PATTERN OR PRACTICE</u>
(Defendant CIA)

56.     This Count realleges and incorporates by reference all of the preceding paragraphs.

57.     Plaintiff has other FOIA requests pending before the CIA in which he has sought expedited processing, but for which he has been deprived of an opportunity to appeal because of the CIA's illegal pattern or practice of refusing to permit appeals of denials of expedited processing.

58.      Plaintiff is a journalist with a focus on national security and international issues, and because of the nature of his job, he will be continuing to submit FOIA requests to the CIA.  Plaintiff will continue to seek expedited processing on many of his requests because of the CIA's substantial backlog and the urgent need to obtain documents to inform the public about the matters about which he reports.  Because of the CIA's refusal to promulgate regulations permitting an appeal from the denial of expedited processing, Plaintiff will be deprived of an opportunity to appeal any such denials.

59.     Plaintiff has been and will continue to be irreparably harmed until the CIA is ordered to fully comply with FOIA, including 5 U.S.C. 552 § (a)(6)(ii)(II), which requires agencies to promulgate regulations providing for "expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare Defendants' failure to comply with FOIA and the Privacy Act to be unlawful;

(2) Enjoin Defendants from continuing to withhold the records responsive to Plaintiff's FOIA and Privacy Act requests and otherwise order Defendant to produce the requested records without further delay, on an expedited basis and without requiring payment of fees;

(3) Enjoin the CIA from continuing to refuse to permit appeals of denials of expedited processing;

(4) Grant Plaintiff an award of attorney fees and other litigation costs reasonably incurred in this action pursuant to 5 USC § 552(a)(4)(E)(i) and 5 USC § 552a(g)(3)(B); and

(5) Grant Plaintiff such other and further relief which the Court deems proper.

Respectfully Submitted,

__/s/ Jeffrey Light_____

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington , DC 20006
(202)277-6213

*Counsel for Plaintiff*